UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PENDLETON DIVISION

MARK S.,[1]

                Plaintiff,

      v.

COMMISSIONER, SOCIAL SECURITY
ADMINISTRATION,

              Defendant.

Case No. 2:19-CV-02047-YY

OPINION AND ORDER

YOU, Magistrate Judge:

      Plaintiff Mark S. seeks judicial review of the final decision by the Social Security
Commissioner ("Commissioner") denying his application for Supplemental Security Income
("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381-1383f.  This court has jurisdiction to
review the Commissioner's decision pursuant to 42 U.S.C. §§ 405(g) and 1383(g)(3).  For the
reasons set forth below, that decision is AFFIRMED.

      Plaintiff protectively filed for SSI on December 28, 2015, alleging disability beginning
on March 1, 2011.  Tr. 191.  At the hearing, plaintiff amended the onset date to December 28,
2015.  Tr. 43.  His application was initially denied on May 26, 2016, and upon reconsideration

---

[1] In the interest of privacy, the court uses only plaintiff's first name and the first initial of his last
name.

on August 24, 2016.  Tr. 110, 117.  Plaintiff requested a hearing before an Administrative Law

Judge ("ALJ"), which took place on January 10, 2019.  Tr. 40-81.  After receiving testimony

from plaintiff, a medical expert, and a vocational expert, ALJ Marie Palachuk issued a decision

on February 12, 2019, finding plaintiff not disabled within the meaning of the Act.  Tr. 12-23.

The Appeals Council denied plaintiff's request for review on October 30, 2019.  Tr. 1-3.

Therefore, the ALJ's decision is the Commissioner's final decision and subject to review by this

court.  20 C.F.R. § 416.1481.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper

legal standards and the findings are supported by substantial evidence in the record.  42 U.S.C.

§ 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).  This court must weigh the

evidence that supports and detracts from the ALJ's conclusion and "'may not affirm simply by

isolating a specific quantum of supporting evidence.'"  *Garrison v. Colvin*, 759 F.3d 995, 1009-

10 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)).  This

court may not substitute its judgment for that of the Commissioner when the evidence can

reasonably support either affirming or reversing the decision.  *Parra v. Astrue*, 481 F.3d 742, 746

(9th Cir. 2007).  Instead, where the evidence is susceptible to more than one rational

interpretation, the Commissioner's decision must be upheld if it is "supported by inferences

reasonably drawn from the record."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008)

(citation omitted); *see also Lingenfelter*, 504 F.3d at 1035.

## SEQUENTIAL ANALYSIS AND ALJ FINDINGS

Disability is the "inability to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result in death

or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920; *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).

At step one, the ALJ found plaintiff had not engaged in substantial gainful activity since December 28, 2015, the alleged onset date. Tr. 25. At step two, the ALJ determined plaintiff suffered from the following severe impairments: multilevel cervical spondylosis, status post fusion in 1995 and December 2014; multilevel thoracic spondylosis; and multilevel lumbar spondylosis, and status post fusion in 2005. *Id.* The ALJ recognized other impairments in the record, *i.e.*, bilateral plantar fasciitis, asthma, depression, anxiety, and history of PTSD, but concluded these conditions to be non-severe. Tr. 25-26.

At step three, the ALJ found plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 27. The ALJ next assessed plaintiff's residual functional capacity ("RFC") and determined he could perform sedentary work as defined in 20 C.F.R. § 416.967(a) with these exceptions: in an eight hour day, he can stand for 30 minutes at a time, walk for 20 minutes at a time and four hours total, and sit for 40 minutes at a time and six hours total with the ability to alternate sitting and standing for two to three minutes at the work station. Tr. 27. He can never climb ladders, ropes, or scaffolds, or crawl, but can otherwise perform occasional postural activity. *Id.* He can perform no overhead lifting and can occasionally reach overhead; he should avoid all exposure to extreme cold, industrial vibration and hazards, walking on uneven terrain, and repetitive twisting of the cervical spine. *Id.*

At step four, the ALJ found plaintiff unable to perform past relevant work.  Tr. 32.

At step five, the ALJ found that considering plaintiff's age, education, work experience, and RFC, he could perform jobs that existed in significant numbers in the national economy, including data entry clerk.  Tr. 32-33.  Thus, the ALJ concluded plaintiff was not disabled.  *Id.*

## DISCUSSION

Plaintiff argues the ALJ erred by (1) rejecting his subjective symptom testimony; (2) failing to find his mental health impairments severe at step two; (3) finding plaintiff did not meet Listing 1.04A and not considering Listing 1.04C at step three; (4) improperly evaluating all treating source opinions; and (5) failing to consider all submitted medical opinion evidence.

## I.    Subjective Symptom Testimony

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted).  A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible."  *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).  The proffered reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted).  If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing."  *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

Effective March 28, 2016, the Commissioner superseded Social Security Ruling ("SSR") 96-7p, governing the assessment of a claimant's "credibility," and replaced it with SSR 16-3p. *See* SSR 16-3p, *available at* 2016 WL 1119029.  SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms.  *Id.* at *1-2.  The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record."  *Id.* at *4.

Here, the ALJ found plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms."  Tr. 28.  However, the ALJ concluded plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  *Id.*

The ALJ discounted plaintiff's statements based on the objective medical evidence.  Tr. 28.  Although lack of supporting medical evidence cannot form the sole basis for discounting subjective pain testimony, it is a factor the ALJ can consider.  *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).  Plaintiff argues the ALJ improperly rejected his pain testimony because she reasoned *only* that the medical evidence did not fully support plaintiff's testimony, i.e., that the ALJ erred "by merely summarizing the medical findings of record in support of the RFC finding rather than identifying contradictory medical findings."  Pl. Br. 14 (citing *Brown-Hunter v. Colvin*, 806 F.3d 487 (9th Cir. 2015)).  In *Brown-Hunter*, the Ninth Circuit held:

> [A]n ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination. To ensure that our review of the ALJ's credibility determination is meaningful, and that the claimant's testimony is not rejected arbitrarily, we require the ALJ to specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination.

806 F.3d at 489.

In this case, the ALJ linked plaintiff's symptom testimony to particular parts of the record. The ALJ first summarized plaintiff's testimony regarding the "intensity, persistence, and limiting effects of his symptoms":

> The claimant alleged that he was unable to work because of back and neck problems, PTSD, and asthma. He testified that he lives in apartment by himself with about 14 steps. He stated that sometimes his lower back locks up. He indicated that his neighbor does all of his housecleaning. He stated that he generally takes out the trash. He has pain when raising his arms. He stated that he could carry half a gallon of milk in each hand. He stated that he could sit for an hour to an hour and a half but is constantly shifting positions. He indicated that he [used to be able to] walk 30 to 45 minutes, noting that he had developed plantar fasciitis in his feet, and that walking used to be his salvation. He stated that he sometimes gets numbness in his hands radiating from his neck.

Tr. 28; *see* Tr. 69-74. The ALJ then detailed the specific medical evidence in the record that did not support that testimony:

> [T]he medical expert cited a plethora of places where the physical findings were noted as negative (contrary to the claimant's subjective complaints of pain[)]. The medical expert cited a plethora of instances where the claimant's complaints were "non-physiological," in other words, the area of numbness alleged, or the area of pain alleged did not correspond with the areas of the back with spondylosis. For example, the claimant complained of pain in the left side, yet the MRI demonstrated issues that "might" produce pain in the right side; and the claimant complained of numbness/lack of sensation over an entire limb where the nerves only enervate one part of the limb, etc.

> On examination in March 2017, cervical range of motion was full without palpable spasm of crepitus. There was a well-healed surgical scar. He had symmetric paraspinous musculature of the thoracolumbar spine. He described tenderness over the T7-8 areas. He had symmetric muscle tone and bulk. Neurologic exam was normal. He had 5/5 motor strength. Sensory exam was

symmetric to light touch.  Straight leg raising was negative.  He had 1/4 reflexes in the upper extremities and 2/4 in the patellar tendons and Achilles bilaterally. Gait was normal.  A bone spect study from April 2017 showed moderate endplate activity at the C5-6 level.  There was mild left facet activity at C2-3 consistent with mild facet arthrosis.  There was moderate T1-2 and severe T6-7 endplate activity consistent with degenerative disc disease.  On examination in April 2017, he was pleasant and in no distress.  He again described pain in the upper back axial spine.  He was moving all extremities well and walked with a normal gait. He was encouraged to continue with non-steroidal anti-inflammatories.  In December 2017, he was interested in coming off his opiate medication. Treatment notes from January 2018 indicate that he works [out] daily to stay active.  X-rays of his hips from March 2018 were normal X-rays of his thoracic spine redemonstrated multiple endplate degenerative changes.  X-rays of his lumbar spine from June 2018 showed no evidence of acute radiographic abnormality and postsurgical change of L5-[S]1 fusion and showed mild foraminal narrowing at L4-5 related to a mild disc bulge.  The claimant started physical therapy in July 2018 and only completed three treatments with two cancellations before not following up to reschedule.

Tr. 28-29 (citing 451, 461-62,471-72, 496, 516, 583-84, 588-89, 598, 607-09, 662, 681, 715, 716, 719, 722, 805, 837, 842).  The medical records cited support the ALJ's conclusions.  This is not a case like *Brown-Hunter*, because the ALJ set forth numerous instances of minimal or nonexistent clinical examination findings, i.e., the court need not speculate about the basis of the ALJ's determination or substitute its conclusions for the ALJ.  *See Brown-Hunter*, 806 F.3d at 495.  The ALJ reasonably rejected plaintiff's subjective symptom testimony based on conflicts with the objective medical evidence.

The ALJ also discounted plaintiff's subjective symptom testimony because "[his] allegations of disabling symptoms are not consistent with his daily activities."  Tr. 29.  An ALJ may invoke activities of daily living in the context of discrediting subjective symptom testimony to (1) illustrate a contradiction in previous testimony or (2) demonstrate that the activities meet the threshold for transferable work skills.  *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Here, the ALJ found the former, i.e., "the claimant's allegations of disabling symptoms are not consistent with his daily activities."  Tr. 29.

Plaintiff testified his symptoms are so severe that he cannot even extend his arm/elbow away from his ribcage.  Tr. 47.  The ALJ noted, "yet the medical evidence of record has documentation where the claimant's brother reports the claimant had physically assaulted his mother."  *Id.* (citing Tr. 884-85).

The ALJ also observed:

> [C]laimant lives in an apartment by himself, which has 14 stairs to access the stairway.  Although he tried to minimize his ability to navigate those stairs, he clearly does navigate those stairs otherwise he would not be able to do the things he testified that he does (such as attend appointments, go shopping, use public transportation, etc.).

*Id.*; *see* Tr. 46.  The ALJ further noted: "The record shows that [plaintiff] walks his dog, feeds, waters, and picks up after it in the yard."  *Id.* (citing Tr. 248).  Indeed, plaintiff testified he takes public transportation into town and goes grocery shopping by walking a quarter of a mile to Walmart.  Tr. 49.  He reported going to mental health counseling "1-2 times/wk"; "walk[ing] around block"; and going to "therapy/church . . . 3-4 times/wk."  Tr. 226.  Plaintiff reported he "feed[s]/water[s] dog."  Tr. 226.  The ALJ reasonably used plaintiff's activities of daily living to illustrate contradictions in his testimony and thus reasonably rejected plaintiff's symptom testimony on this basis.  *See Orn*, 495 F.3d at 639.

The ALJ additionally found inconsistencies in plaintiff's reports, which she described as having the potential to "mislead[ ]."  Tr. 29.  Contradictory statements are a clear and convincing reason to reject symptom testimony.  *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (statements about leaving employment contradicting that it was because of injury is a clear and convincing reason to reject symptom testimony).  The ALJ found statements plaintiff had made in his disability report contradicted his testimony about his level of college education:

> In his application, the claimant reported his education level as three years of college, yet at the hearing, he testified contrarily that he did not have three years

of college, only a couple of classes at each of three different colleges. Upon
application, he gave an employment history including account executive for a
marketing firm, communications coordinator, corporate recruiter, etc., these are
not positions available to individuals without significant college education[ ].

Tr. 29 (citing Tr. 76, 281). The ALJ reasonably rejected plaintiff's symptom testimony based on

contradictory statements. *Accord Cleveland v. Comm'r Soc. Sec. Admin.*, No. 6:15-CV-01429-

HZ, 2016 WL 8677322, at *5 (D. Or. Sept. 9, 2016) (holding the ALJ provided a "clear and

convincing reason" when the plaintiff provided inconsistent testimony about why she was fired

from her job as a bartender).[2]

In sum, the ALJ's interpretation was reasonable and she made the requisite specific

findings to reject plaintiff's subjective symptom testimony. Because the ALJ's findings are

supported, they must be upheld. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193

(9th Cir. 2004) (holding if evidence exists to support more than one rational interpretation, the

court is bound to uphold the ALJ's findings).

## II.     Step Two

Plaintiff contends the ALJ erred at step two by omitting his mental impairments from the

list of his "severe" impairments. Pl. Br. 5-9.

At step two, a claimant is not disabled if the Commissioner determines the claimant does

not have any medically severe impairment or combination of impairments. *Stout v. Comm'r,*

*Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *see also* 20 C.F.R. §§ 404.1509,

404.1520(a)(4)(ii). A severe impairment "significantly limits" a claimant's "physical or mental

---

[2] Even if the ALJ erred in rejecting plaintiff's symptom testimony based on inconsistent
statements, any error is harmless because the ALJ rejected it on another valid ground. *See*
*Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008) (finding an
error by the ALJ with respect to one or more factors in a symptom testimony evaluation may be
harmless if there "remains substantial evidence supporting the ALJ's conclusions" in that
regard).

ability to do basic work activities." 20 C.F.R. § 404.1521(c); *see also Ukolov v. Barnhart*, 420

F.3d 1002, 1003 (9th Cir. 2005) (citations omitted). The ability to do basic work activities is

defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1522(b).

The ALJ resolved step two in plaintiff's favor. Therefore, any omission is harmless if the

ALJ considered the effect of plaintiff's mental impairments in subsequent steps of the disability

evaluation. *Lewis*, 498 F.3d at 911.

In her decision, the ALJ found plaintiff's had medically determinable impairments of

depression, anxiety, and history of PTSD. Tr. 26. The ALJ found these impairments to be non-

severe based on the medical evidence of record:

> [Plaintiff's mental] impairments are treated with prescriptions. All of the treating
> clinical notes from the claimant's primary care providers (Dr. Kilbourn and Nurse
> Yocum) show psychological assessments that are within normal limits with just a
> few documenting mildly anxious mood. Otherwise, there are no psychiatric
> symptoms. Many of the visits do not mention any psychiatric conditions at all
> except to list it as a prior diagnosis.

*Id.* (citing Tr. 676-99, 738-846). The ALJ further noted:

> In October 2017, the claimant presented to ask for behavior health care for
> assistance in support of his Social Security disability application. His doctor
> explained that they would not be able to fill out the paperwork since he had not
> been consistent with his appointments with behavioral health care. Counseling
> records from 2018 show multiple rescheduled or cancelled appointments. The
> qualified mental health clinician's clinical notes do not even start until the first
> assessment in June 2018 and are negative every single visit for any psychiatric
> symptoms whatsoever except on two occasions where there is mention of
> "depressed mood[.]"

*Id.* (citing, 816, 867-73, 881, 883).

An ALJ may draw inferences about the severity of an impairment based on the degree of

treatment the claimant sought. *Flaten v. Sec'y of Health*, 44 F.3d 1453, 1464 (9th Cir. 1995).

Here, not only did the ALJ determine plaintiff mental conditions were non-severe based on lack

of evidence of psychiatric symptoms, but the ALJ also acknowledged that plaintiff's mental

impairments were treated with prescriptions, he did not seek treatment until recently, and he missed a number of his mental health appointments.  On this record, it was reasonable to the ALJ to infer that plaintiff's mental impairments were not severe.

Plaintiff argues the ALJ's omission of his mental impairments at step two caused further error because the ALJ omitted limitations caused by his mental impairments from the RFC.  Pl. Br. 5-9.  An ALJ is required to consider all limitations, whether severe or non-severe, when assessing a claimant's RFC.  *See* 20 C.F.R. § 416.945(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe' . . . when we assess your residual functional capacity.").  Here, the ALJ considered plaintiff's mild mental limitations in assessing the RFC. *See* Tr. 24 ("In making th[e] finding [about the RFC], the undersigned must consider all of the claimant's impairments, including impairments that are not severe"); 27 ("In making the finding [about the RFC], the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence[.]"); *id.* ("[T]he following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis."). *See Scotellaro v. Colvin*, 2015 WL 4275970, at *9 (D. Nev. June 22, 2015), *report and recommendation adopted*, 2015 WL 4275978 (D. Nev. July 14, 2015) ("Although the ALJ did not extensively discuss Plaintiff's mental impairment at step four, he thoroughly discussed the evidence supporting his findings at step two and incorporated them by reference in his RFC analysis.").

However, an ALJ need not include such non-severe limitations in the RFC if they do not cause more than a minimal limitation on a claimant's ability to work.  *See Burch*, 400 F.3d at

684 (finding an ALJ's decision not to include plaintiff's impairment in VE hypothetical or RFC

determination was proper because there was no evidence plaintiff's impairment caused any

functional limitations); *Ball v. Colvin*, No. CV 14–2110–DFM, 2015 WL 2345652, at *3 (C.D.

Cal. May 15, 2015) (mild mental impairments "by definition do not have more than a minimal

limitation on Plaintiff's ability to do basic work activities . . . which translates in most cases into

no functional limitations," and thus the ALJ was not required to include them in the RFC).  Here,

the ALJ found that "the claimant's medically determinable mental impairments cause no more

than 'mild' limitation in any of the functional areas."  Tr. 26.  Because plaintiff's mental

impairments were not severe and did not cause any significant impairment, the ALJ was not

required to include them in plaintiff's RFC.

Thus, the ALJ did not err at Step Two.

## III.    **Step Three**

Plaintiff argues that at step three of the sequential evaluation process, the ALJ erred by

failing to find his cervical spine impairment met Listing 1.04A and not considering Listing

1.04C, which covers spine disorders.  Pl. Br. 9-11 (citing 20 C.F.R. pt. 404, subpt. P, app. 1,

§ 1.04).

At step three, the ALJ must determine whether a claimant's medically determinable

impairment "meets" or "equals" associated criteria in the Commissioner's regulations.  20 C.F.R.

§§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii).  Conditions set forth in the Listing of Impairments

("Listings") are considered so severe that "they are irrebuttably presumed disabling, without any

specific finding as to the claimant's ability to perform his past relevant work or any other jobs."

*Lester v. Chater*, 81 F.3d 821, 828 (9th Cir. 1995) (citing 20 C.F.R. § 404.1520(d)).  The

claimant bears the burden of establishing a prima facie case of disability under the Listings.  *See*

*Tackett*, 180 F.3d at 1099 ("[Claimant] had to establish that he met or equaled each of the

following characteristics of a [listing].").  "For a claimant to show that his impairment matches a

listing, it must meet *all* of the specified medical criteria."  *Sullivan v. Zebley*, 493 U.S. 521, 530

(1990) (emphasis in original).  "An impairment that manifests only some of those criteria, no

matter how severely, does not qualify."  *Id.* (citing SSR 83-19, *available at* 1983 WL 31248, at

*2).

A.    1.04A

Section 1.04A requires:

Evidence of nerve root compression characterized by neuro-anatomic distribution
of pain, limitation of motion of the spine, motor loss (atrophy with associated
muscle weakness or muscle weakness) accompanied by sensory or reflex loss and,
if there is involvement of the lower back, positive straight-leg raising test (sitting
and supine).

20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04A.  The instant analysis does not involve the lower

back; accordingly, to meet the listing, plaintiff must show: (1) neuro-anatomic distribution of

pain; (2) limitation of the motion of the spine; and (3) motor loss with sensory or reflex loss.[3]  *Id.*

Each element of Listing 1.04A must be simultaneously present to meet the listing criteria.  *See*

SSR 15-1(4), *available at* 2015 WL 5697481, at *57420 ("Listing 1.04A uses the conjunction

'and' when enumerating the medical criteria in order to establish that the entire set of criteria

must be present at the same time on examination.").

---

[3] Although lower back impairments are among plaintiff's "severe" impairments, plaintiff argues
that "[i]n this case, there was no requirement to show a positive straight leg raise testing because
the nerve root compromise did not involve the lumbar spine."  Pl. Br. 10 (citing 20 C.F.R. pt.
404, subpt. P, app. 1, § 1.04A.  The Commissioner does not dispute this.  Def. Br. 3-4.
Accordingly, the court proceeds with the 1.04A analysis without including evidence of a
"positive straight-leg raising test."  In this case, there was no requirement to show a positive
straight leg raise testing because the nerve root compromise did not involve the lumbar spine. 20
C.F.R. pt. 404, subpt. P, app. 1, § 1.04A.

Here, the ALJ found:

> With regard to listing 1.04A for disorders of the spine, there is no evidence that the claimant has any motor loss or accompanying sensory or reflex loss.

Tr. 27. The record as a whole supports the ALJ's conclusion that plaintiff does not meet listing 1.04A. *See, e.g.*, Tr. 451, 461, 471, 496, 504; 509, 584, 588, 598, 681, 686, 691, 698, 715, 719, 752 (noting, *inter alia*, "Motor Examination: Moves extremities symmetrically (5+), no spasticity, no atrophy, no fasciculations, no cogwheel rigidity"; "Sensory Examination: Intact proprioception and vibratory sense, withdraws to painful stimuli symmetrically"; "Able to tandem gait, walks on heels and toes without difficulty; ambulates with no difficulties with good arm swing, no bradykinesia"; "Reflexes: 1 + and symmetrical, no evidence of frontal release signs").

Plaintiff challenges the ALJ's finding regarding Listing 1.04A, contending the record contains evidence of all four elements of the Listing. Pl. Br. 10 (citing Tr. 402, 407, 439, 440, 442, 456, 500, 509, 584, 589, 676-77, 704, 716, 721, 825-26). "Equivalence is determined on the basis of a comparison between the 'symptoms, signs and laboratory findings' about the claimant's impairment as evidenced by the medical records 'with the medical criteria shown with the listed impairment.'" *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990) (citing 20 C.F.R. § 404.1526). However, plaintiff makes no attempt to compare his symptoms, signs and laboratory findings with the medical criteria shown with the listed impairment, or to offer any theory as to how his condition equals a listed impairment, and therefore does not sufficiently raise the argument that the findings are equal in severity to Listing 1.04A. Moreover, plaintiff cites no evidence of nerve root compromise in the record. Plaintiff points to imaging and notes from an imaging follow-up appointment, but the imaging does not discuss nerve root

compromise and the notes only discuss nerve "irritation."  Pl. Br. 10 (citing Tr. 716, 721).  In

sum, the ALJ adequately addressed Listing 1.04A.

> **B.     1.04C**

Plaintiff did not articulate a theory that his impairments equaled the requirement of

Listing 1.04C at his hearing before the ALJ.  Tr. 40-74.  Nor did he raise this argument before

the Appeals Council.  Tr. 308-31.  A plaintiff may not raise an argument before this court not

raised before the Appeals Council.  *Meanel v. Apfel,* 172 F.3d 1111, 1115 (9th Cir. 1999).

Plaintiff has waived arguments pertaining to this theory, and his argument is now rejected for

that reason.

The ALJ did not err at Step Three.

**IV.     Medical Opinion Evidence**

> **A.     Treating Therapist v. State Agency Psychological Consultants**

Plaintiff contends the ALJ erred by rejecting the opinion of his treating therapist and by

instead giving "significant weight" to the opinions of state agency consultants.  Pl. Br. 15.

> > **1.     State Agency Psychological Consultants: Scott Kaper, Ph.D., and
> > Irmgard Friedburg, Ph.D.**

As state agency psychological consultants, Dr. Kaper and Dr. Friedburg are "highly

qualified" psychologists with expertise in evaluating "medical issues in disability claims."  SSR

96-6p, *available at* 1996 WL 374180 at *2.  An ALJ must explain the weight given to these

opinions in her decision.  *See id.*  An ALJ must also evaluate the degree to which the providers

of these opinions consider all of the pertinent evidence, including opinions of treating and other

examining sources.  *See* 20 C.F.R. § 404.1527(c)(3)); *see also Tonapetyan v. Halter*, 242 F.3d

1144, 1149 (9th Cir. 2001) (stating the opinion of a non-examining medical expert "may

constitute substantial evidence when it is consistent with other independent evidence in the record").

On May 25, 2016, after evaluating medical records from January 21 through May 4, 2016, Dr. Kaper opined that plaintiff's mental condition was non-severe. Tr. 87. Dr. Kaper concluded plaintiff had only mild "Restriction of Activities of Daily Living," "Difficulties in Maintaining Social Functioning," and "Difficulties in Maintaining Concentration, Persistence or Pace[,]" and thus assessed no mental limitations. Tr. 88. Dr. Kaper explained: "Cl[aimant] is noted to be struggling with anxiety, w /referral to counseling outstanding. ADLs make very plain that any difficulties w /[concentration, persistence, or pace are] due to pain. No more than [not significant] deficits noted otherwise, leaving no compelling reason for further development." *Id.* On August 22, 2016, Dr. Friedburg reviewed the medical evidence of record and affirmed Dr. Kaper's opinion. Tr. 95-103.

The ALJ explained that she was giving "significant weight" to Dr. Kaper's and Dr. Friedburg's opinions "because they had the opportunity to review the entire record as it existed up to the time of their review, and their opinions are based on the lack of objective findings in the medical evidence of record." Tr. 30 (citing Tr. 82-88, 95-103). The opinions of Dr. Kaper and Dr. Friedburg are consistent with the other independent evidence in the record and constitute substantial evidence supporting the ALJ's decision. *Tonapetyan*, 242 F.3d at 1149.

### 2.    Treating Therapist: Dennis McCay, QMHP (Qualified Mental Health Professional)

As a therapist, McCay is a medical source, but is not considered an "acceptable medical source" under the Act; accordingly, the applicable legal standard is the equivalent of a lay

witness or "other source."[4]  *Dale v. Colvin*, 823 F.3d 941, 943 (9th Cir. 2016); SSR 06-03p,

*available at* 2006 WL 2329939.  Lay witness testimony regarding the severity of a claimant's

symptoms or how an impairment affects a claimant's ability to work is competent evidence that

an ALJ must consider.  *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).  To reject such

testimony, an ALJ must provide "reasons germane to each witness."  *Lewis*, 236 F.3d at 511

(citations omitted).  "Further, the reasons 'germane to each witness' must be specific.  *Bruce v.*

*Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009) (citing *Stout v. Comm'r Social Sec. Admin*, 454 F.3d

1050, 1053 (9th Cir. 2006)).

On August 8, 2018, McCay submitted a "Mental Source Statement."  Tr. 707-10.  McCay

indicated plaintiff has moderate limitations in his ability to: remember locations and work-like

procedures; understand and remember detailed instructions; carry out very short simple

instructions; sustain an ordinary routine without special supervision; make simple work-related

decisions; interact appropriately in public; ask simple questions or request assistance; maintain

socially appropriate behavior and adhere to basic standards of neatness and cleanliness; be aware

of normal hazards and take appropriate precautions; set realistic goals or make plans

independently of others; and understand, remember, or apply information.  Tr. 707-09.  McCay

opined that plaintiff has marked limitation in his ability to: carry out detailed instructions;

maintain attention and concentration for extended periods; perform activities within a schedule;

maintain regular attendance and be punctual within customary tolerances; accept instructions and

---

[4] Effective March 27, 2017, the Social Security Administration amended its regulations and
SSRs relating to the evaluation of medical evidence, including the consideration of "acceptable
medical sources" and "non-acceptable medical sources" or "other medical sources."  Because
Plaintiff's claim was filed before March 27, 2017, and the ALJ issued his opinion after March
27, 2017, the amended regulations and SSRs do not apply here.

respond appropriately to criticism from supervisors; respond appropriately to changes in the

work setting; travel in unfamiliar places or use public transportation; interact with others;

concentrate, persist, or maintain pace; and adapt and manage himself. *Id.* According to McCay,

plaintiff has severe limitation in his ability to: work in coordination with or proximity to others

without being distracted by them; and complete a normal workday and workweek without

interruptions from psychologically based symptoms and perform at a consistent pace without an

unreasonable number and length of rest periods. Tr. 707-08. McCay opined plaintiff would be

off task over 30% of the time and miss four or more days of work per month. Tr. 709.

The ALJ gave McCay's opinion "little weight" for four reasons. Tr. 31. First, the ALJ

rejected McCay's opinion because he is "merely" a qualified mental health professional. Tr. 31.

However, other sources are qualified to provide evidence about "the severity of [a claimant's]

impairment(s) and how it affects [the claimant's] ability to work." *See Garrison*, 759 F.3d at

1013-14 (alterations in original) (citation omitted); *see also* SSR 06-03P, *available at* 2006 WL

2329939, at *6. ("Since there is a requirement to consider all relevant evidence in an individual's

case record, the case record should reflect the consideration of opinions from medical sources

who are not 'acceptable medical sources' and from 'non-medical sources' who have seen the

claimant in their professional capacity."). Thus, the ALJ's rejection of McCay's opinion because

he is not an "acceptable" medical source is not a germane reason.

Second, the ALJ rejected McCay's opinion because it was inconsistent with the record.

Tr. 31. Specifically, the ALJ rejected McCay's opinions because

> [a]ll of the treating clinical notes from the claimant's primary care
> providers . . . show psychological assessments that are within normal limits with
> just a few documenting mildly anxious mood, otherwise no psychiatric symptoms.
> Many of the visits do not mention any psychiatric condition at all except to list it
> as a prior diagnosis.

Tr. 31 (citing Tr. 676-99, 738-847). Inconsistency with medical evidence is a germane reason

for discounting the testimony of a lay witness. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th

Cir. 2005) (citation omitted). Thus, the ALJ provided a germane reason—inconsistency with the

record—and supported it with substantial evidence.

Third, the ALJ noted that McCay's opinion "is internally inconsistent with his own

clinical notes[.]" Tr. 31. Specifically, the ALJ found McCay's notes "do not even start until the

first assessment in June 2018 (three years after the amended alleged onset date) and are negative

every single visit for any psychiatric symptoms whatsoever except on two occasions where there

is mention of 'depressed mood[.]'" Tr. 31 (citing Tr. 757, 759, 862-87). An ALJ may reject

opinions that are internally inconsistent. *Nguyen*, 100 F.3d at 1464. Thus, the ALJ provided

another germane reason—internal inconsistency—and supported it with substantial evidence.

Fourth, the ALJ rejected McCay's opinion because "[t]he claimant's presentation at the

hearing was contrary to the limits opined since he demonstrated no psychiatric symptoms." Tr.

31. An "ALJ's reliance on his personal observations of [a claimant] at the hearing has been

condemned as 'sit and squirm' jurisprudence." *Perminter v. Heckler*, 765 F.2d 870, 872 (9th

Cir. 1985) (citation omitted). "Denial of benefits cannot be based on the ALJ's observation of

[the claimant], when [the claimant's] statements to the contrary . . . are supported by objective

evidence." *Id.* Here, the ALJ discounted McCay's opinion because plaintiff "sat quietly and was

prepared and articulate in his responses to questions, demonstrating good memory, etc., just as

what is documented in his primary care providers' visits." Tr. 31 (citing Tr. 82-88, 95-103).

Because McCay's statements to the contrary are not objectively supported, the ALJ properly

included her own observations of plaintiff in discounting McCain's opinion. *See Morgan v.

Comm'r Soc. Sec. Admin*, 169 F.3d 595, 600 (9th Cir. 1999) (citations omitted). Thus, the ALJ

provided yet another germane reason—her own observations of plaintiff at the hearing—and
supported it with substantial evidence.

In sum, the ALJ articulated three germane reasons for rejecting McCay's opinion that
were supported by substantial evidence and, accordingly, did not err when she discounted his
"other source" opinion.  *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir.
2009) (suggesting only one germane reason is sufficient).  Plaintiff disputes the ALJ's decision
to afford McCay's opinion "little" weight while giving greater weight to the state agency
psychological consultants, but the ALJ is responsible for resolving disputes in the medical
evidence and ambiguities in the record.  *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995).
Where, as here, the ALJ's interpretation of the medical evidence and record is reasonable, it
should not be second-guessed.  *Rollins v. Massanari,* 261 F.3d 853, 857 (9th Cir.2001) (citation
omitted).  Accordingly, the ALJ did not err in rejecting McCay's opinion and giving great weight
to the opinions of state agency consultants.

### B.    Treating Providers' Opinions

Plaintiff contends the ALJ erred by rejecting the opinions of his treating providers.  Pl.
Br. 17.

### 1.    Evaluating Medical Opinions

The ALJ is responsible for resolving conflicts in the medical record, including conflicting
physicians' opinions.  *Carmickle*, 533 F.3d at 1164.  The law distinguishes between the opinions
of three types of physicians: treating physicians, examining physicians, and non-examining
physicians.  *See* 20 C.F.R. § 404.1527.  The opinions of treating physicians are generally
accorded greater weight than the opinions of non-treating physicians.  20 C.F.R.
§ 404.1527(c)(2); *Lester*, 81 F.3d at 830 (citation omitted).  A treating physician's opinion that is

not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991) (citation omitted). If, however, a treating physician's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific, legitimate reasons" for discrediting the treating physician's opinion. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

### 2.      Rodrigo Lim, M.D.

In his April 26, 2016 examination notes, neurologist Dr. Lim opined that given plaintiff's present neurological problems, he should avoid pulling, pushing, carrying objects more than 10 pounds, squatting, bending, twisting, and crawling, and plaintiff should be considered permanently disabled. Tr. 698-99.

The ALJ gave Dr. Lim's opinion "limited weight." Tr. 31. The ALJ observed that the "function by function limits are generally consistent with the residual functional capacity . . . and the clinical objective findings." *Id.* However, the ALJ found that Dr. Lim's conclusion regarding plaintiff's "disability is given limited weight as that is an issue reserved to the Commissioner." Tr. 31.

As the ALJ correctly observed, the issue of whether a claimant is disabled is a matter reserved for the Commissioner. SSR 96–5P, *available at* 1996 WL 374183, *2 ("The regulations provide that the final responsibility for deciding [whether an individual is 'disabled' under the Act] . . . is reserved to the Commissioner."); 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability."); *see also Rodriguez v. Bowen,* 876 F.2d 759, 762 (9th Cir. 1989) (observing that a "treating physician's opinion on the ultimate issue of disability

is not necessarily conclusive").  Thus, the ALJ did not err in giving Dr. Lim's opinion limited weight.

>    **3.    Roger Kilbourn, D.O.**

In an October 18, 2017 medical report, Dr. Kilbourn opined plaintiff could perform "light work" but would need to lie down for two to three hours a day and would miss four days or more of work per month.  Tr. 704-05.  In a December 27, 2017 medical report, Dr. Kilbourn again opined plaintiff would need to lie down for two to three hours a day and would miss four days or more of work per month, but indicated that plaintiff's exertional level was "Severely limited: Unable to meet the demands of full time sedentary work."  Tr. 897.

The ALJ gave Dr. Kilbourn's opinions "little weight" because they were inconsistent with each other.  Tr. 31.  Inconsistency with an earlier opinion is a specific and legitimate reason to discount a medical opinion.  *De La Cerda v. Colvin*, 609 F. App'x 475, 476 (9th Cir. 2015) (finding the ALJ gave specific and legitimate reasons for rejecting Dr. Capen's opinion that De La Cerda was disabled, including that Dr. Capen's opinion was inconsistent with his earlier opinion that De La Cerda could perform desk or supervisory work).  Here, Dr. Kilbourn's earlier medical report conflicts with a later one as to plaintiff's exertional level.  Compare Tr. 705, *with* Tr. 897.  Thus, the ALJ properly discounted Dr. Kilbourn's opinions on this basis.

The ALJ also gave Dr. Kilbourne's opinions "little weight" because they were contradicted by the testimony of Allan Levine, M.D., the medical expert who testified at the hearing and "had the opportunity to review the entire medical evidence of record and who has a greater level of specialized expertise."  Tr. 31.  Courts have upheld an ALJ's decision to reject the opinion of an examining physician based in part on the testimony of a non-examining medical advisor.  *Lester,* 81 F.3d at 831.  The analysis and opinion of an expert selected by an

ALJ may be helpful in his adjudication, and the court should not second guess the ALJ's resolution of conflicting medical testimony. *Andrews,* 53 F.3d at 1041 (citation omitted). Further, testimony of a medical expert may serve as substantial evidence when supported by and consistent with other evidence in the record. *Id.*

At the hearing, Dr. Levine testified that plaintiff has medically determinable impairments of chronic neck, mid-back, and low back pain. Tr. 53, 54, 55. Dr. Levine "found no consistent evidence of nerve root or spinal cord compromise." Tr. 56 (citing Tr. 401-02); *see also* Tr. 59. He also noted that decreased sensation and decreased strength are not "consistently noted in the medical record." Tr. 56-57 (citing Tr. 451, 456, 460, 461, 516). Dr. Levine observed the record contained many notes indicating, e.g., five-out-of-five strength, intact sensory evaluation, normal reflexes, normal gait, no cervical and lumbar spine tenderness, and a full range of motion. Tr. 57-58 (citing Tr. 583, 584, 588, 589, 597, 598, 607, 608, 662, 681, 731, 803). Dr. Levine testified that although an EMG nerve conduction study documents some mild bilateral C5 radiculopathy, and some findings suggestive of C5, C6, and S1 radiculopathy, this suggests "some nerve root irritation but not necessarily root compromise." Tr. 59 (citing Tr. 548-50).

Dr. Levine's opinion, which is consistent with the independent medical evidence, constitutes substantial evidence to support the ALJ's rejection of Dr. Kilbourn's opinions. *Morgan*, 169 F.3d at 600 ("Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it.") (citation omitted). Therefore, the ALJ provided specific and legitimate reasons, supported by substantial evidence, for discounting Dr. Kilbourn's opinions.

**4.    Shane Yocum, F.N.P., and Lance Shoemaker, D.C.**

Family nurse practitioner Yocum and chiropractor Dr. Shoemaker are not "acceptable medical sources." *See* 20 C.F.R. § 404.1502(a) (defining an "[a]cceptable medical source" to include medical doctors, but not nurse practitioners or chiropractors). Thus, the ALJ needed to give only germane reasons to discredit their opinions. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) *superseded by regulation on other grounds.*

In an October 18, 2017 medical report, NP Yocum opined plaintiff was severely limited and unable to meet the demands of full-time sedentary work. Tr. 677. NP Yocum indicated "work on a regular and continuous basis would cause [plaintiff's] condition to deteriorate because he "cannot bend, twist, crawl or squat—causing significant symptoms, ↑ spasm + ↓ ROM [range of motion]. Turning his head side to side [causes] significant pain and worsening symptoms that impact his quality of life." *Id.*

The ALJ gave NP Yocum's opinion "little weight" because it is internally inconsistent with his chart notes. Tr. 30. An ALJ may reject an "other source" medical opinion that is internally inconsistent. *See Bayliss*, 427 F.3d at 1216. Here, the ALJ found: "The basis for [NP Yocum's] given limitations says 'see chart notes' but the chart notes have repeated normal findings." Tr. 30 (citing Tr. 583-84, 588-89, 598, 607-08). Thus, the ALJ offered a germane reason for assigning little weight to the opinion of NP Yocum.

In a December 31, 2018 medical report, Dr. Shoemaker opined plaintiff was severely limited and unable to meet the demands of full-time sedentary work, "work on a regular and continuous basis would cause [plainitff's] condition to deteriorate" because of "[his] current issues would become much worse," and plaintiff would miss work "4 or more days per month." Tr. 900.

The ALJ gave Dr. Shoemaker's opinion "little weight" because "it is inconsistent with objective and clinical findings of other providers" and "Dr. Shoemaker gave opinions completely outside the area of his expertise." Tr. 31. Inconsistency with medical evidence is a germane reason for discrediting testimony of an "other source." *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) (citation omitted). An ALJ also may reject an opinion that is inconsistent with other providers' findings. *See Morgan*, 169 F.3d at 601-03. Moreover, an ALJ should "generally give more weight to the opinion of a specialist about medical issues related to his or her area of expertise than to the opinion of a source who is not a specialist. " 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5).

Here, the ALJ concluded Dr. Shoemaker's opinion was inconsistent with the objective medical evidence, citing to the record where, e.g., treatment notes indicated no motor, sensory, reflex, or gait issues. Tr. 31 (citing Tr. 451, 461-62, 471-72, 496, 516, 583-84, 588-89, 607-09, 662, 681, 805). The ALJ also found that Dr. Shoemaker's opinion was contradicted by the testifying medical expert, Dr. Levine, "who has a greater level of specialized expertise." Tr. 31; *see* Tr. 29-30. These were germane reasons to discount Dr. Shoemaker's opinion.

Plaintiff contends the ALJ erred by "essentially reject[ing] all of these treating source opinions in favor of nonexamining Dr. Levine's testimony." Pl. Br. 17. However, it is not the role of the court to resolve inconsistencies in the medical evidence; that is the role of the ALJ. *Carmickle,* 533 F.3d at 1164 ("The ALJ is responsible for resolving conflicts in the medical record."). Where, as here, an ALJ's decision was a rational interpretation of the medical opinions, the court must defer to the ALJ's finding. *See Rollins*, 261 F.3d at 857.

V.      **Failure to Consider Opinion of Thomas Miller, D.C.**

Plaintiff argues the ALJ erred by not considering a medical report from treating

chiropractor Dr. Miller and by not including his report as an exhibit in the record.[5]  Pl. Br. 18-19.

In a December 2018 medical report, Dr. Miller opined plaintiff needed to lay down

during the day, work would cause his condition to deteriorate, he would miss four or more days

of work per month, and his exertional level was "severely limited.". Tr. 2, 14-19.

Although the ALJ's opinion does not state that he considered Dr. Miller's opinion, Dr.

Miller's opinion is similar to Dr. Shoemaker's opinion.  *Compare* Tr. 14-19, with Tr. 899-901.

The ALJ is not required to discuss every piece of evidence on record, so long as the ALJ's

decision is supported by substantial evidence.  *See Howard v. Barnhart*, 341 F.3d 1006, 1012

(9th Cir. 2003) (citations omitted).  If any error existed due to the ALJ's failure to discuss Dr.

Miller's opinion, such error was harmless.  *Tommasetti,* 533 F.3d at 1038.

## ORDER

The Commissioner's decision is AFFIRMED.

DATED  March 24, 2021.

_____
/s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge

---

[5] Plaintiff identifies Dr. Miller as a "treating physician."  Pl. Br. 18.  Dr. Miller, as a chiropractor, is not an "acceptable medical source."  *See* 20 C.F.R. § 404.1502(a) (defining an "[a]cceptable medical source" to include medical doctors, but not chiropractors).